The plaintiff-appellant, Terry Teppee, appeals from the order of the trial court granting summary judgment to the defendant-appellee, R.A. Hermes, Inc., doing business as Reading Storage. The action arose out of a fire that occurred at Hermes's storage facility and destroyed Teppee's property. In his three assignments of error, Teppee asserts (1) that the record creates a genuine issue of material fact whether Hermes was negligent in not preventing the fire or breached a contractual promise to keep the premises secure; (2) that the trial court erred by allowing Hermes to conduct additional discovery beyond the cut-off date; and (3) that the trial court erred by failing to consider whether Hermes was a bailor with respect to Teppee's property. We find none of these assignments to have merit and thus affirm the trial court.
The evidence in this case can be quickly summarized. A fire investigation concluded that the fire that destroyed Teppee's property was caused by Dan Stacey, who rented a storage area in the same unit as Teppee's. The investigation concluded that Stacey "poured about a half gallon of gasoline in a container and lit it to stay warm," after which the fire "roared up and outward and ignited the material in the storage area next to [Stacey's] and also [Stacey's] storage area."
Although he was named as a defendant in the complaint, Stacey's address was described as "unknown." There is no direct evidence from Stacey in the record. The fire report refers to an attached statement from Stacey, but the statement, if it exists, is not part of the record certified to us.
The basis of Teppee's negligence claim is that Stacey was using the storage space as living quarters, and that Hermes was negligent in not being aware of this fact. Teppee, however, has no direct evidence to support the assertion that Stacey was living in the storage space he rented, or, if so, for how long. Rather, he relies on the testimony provided by him and two friends that they saw a person resembling Stacey inside the closed facility two nights before the fire occurred. The person they recounted seeing was simply standing in front of a storage area. The three men testified that their view of the person they thought resembled Stacey was obtained from a distance of approximately fifty yards, as they stood outside the fence, unable to get in. Additionally, all three men testified that they saw Stacey the next day preparing food on a butane-gas grill in front of his storage space. They admitted, though, that they had no firsthand knowledge that Stacey spent the night or used the storage space as a domicile. They admitted, further, that they could not absolutely identify Stacey as the man they spotted the night before from outside the fence.
The basis of Teppee's contractual claim is that the fire constituted a breach of a promise made by Hermes that it would provide security for the facility. The alleged "promise" apparently was oral in nature. According to Teppee, he did not sign a written rental agreement — a fact disputed by Hermes — but he was "under the impression that [Hermes] had security." In support of this claim, in addition to the evidence outlined above, Teppee and his two friends testified that they concluded that the surveillance cameras at the storage facility were defective based upon the appearance of the cameras. They offered no proof, however, that the cameras were inoperable. The fire-investigation report states clearly that the investigator relied on the facility's video tapes to review the comings and goings of persons before, during, and after the fire at the facility, thus indicating that at least one of the cameras was working.
Teppee also makes the general allegation that Hermes was remiss in enforcing a rule against flammable substances in the storage areas, citing, for example, his observation of one person using the storage area for paint supplies. There is no reliable evidence, however, to link the fire to any other combustible than the gasoline employed by Stacey. There is, furthermore, no evidence as to when Stacey brought the gasoline onto the premises, or that Hermes was negligent in not detecting the gasoline earlier.
Although Teppee argues in his first assignment of error that the evidence is sufficient to create a triable issue of negligence or breach of contract, we agree with the trial court that it lacks the necessary substance to raise genuine issues of material fact. The trier of fact would necessarily have to stack inference upon inference in order to reach the conclusion that Hermes was negligent, that its negligence was a proximate cause of the damage to Teppee's property, or that there was some breach of an unspecific oral promise of security. The first assignment of error is, therefore, overruled.
With respect to the second assignment of error, Teppee argues that the trial court erred by allowing Hermes to depose witnesses whose affidavits were submitted in opposition to Hermes's motion for summary judgment, when the cut-off date for discovery had already expired. We agree with Hermes, however, that this was a decision within the discretion of the trial court, and that no abuse of that discretion is demonstrated. Teppee's second assignment of error is, therefore, overruled.
In his third assignment of error, Teppee asserts that the trial court erred by failing to rule that his storage of personal property in a self-storage facility constituted a bailment. This assignment of error is overruled, however, since there is no evidence that there was a delivery of Teppee's property to Hermes in the typical sense of a bailment. Teppee testified that he had exclusive access to the self-storage unit and that he expected privacy with respect to his stored property, meaning, in other words, that aside from his rental of storage space, he had not entrusted the goods to Hermes's keeping. Thus the elements of a bailment have not been met. See Johnson v. Akron Mgt. Corp. (May 30, 1990), Summit App. No. 14320, unreported. Teppee's third assignment is, therefore, overruled.
Accordingly, the judgment below is affirmed.
And the Court, being of the opinion that there were reasonable grounds for this appeal, allows no penalty. It is further Ordered that costs be taxed in compliance with App.R. 24, that a copy of this Memorandum Decision and Judgment Entry shall constitute the mandate, and that said mandate shall be sent to the trial court for execution pursuant to App.R. 27.
Judgment affirmed.
 Doan, P.J., Hildebrandt and Gorman, JJ.
To the Clerk:
Enter upon the Journal of the Court on August 27, 1999 per order of the Court _______________________________. Presiding Judge